**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | * | |
| **LANDIS, INC.,** | * | **Chapter 7** |
| Debtor | * | |
| | * | **Case No.: 1-05-bk-02823-MDF** |
| **MARKIAN SLOBODIAN, Trustee** | * | |
| **LANDIS, INC.,** | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **Adv. No.: 1-07-ap-00078** |
| | * | |
| **CERTIFIED STEEL COMPANY,** | * | |
| Defendant | * | |

## OPINION

### Procedural History

On April 28, 2005, Landis, Inc. ("Debtor") filed a chapter 11 bankruptcy petition. The case was converted to chapter 7 on June 20, 2006, and Markian Slobodian (the "Trustee") was appointed as the trustee to liquidate Debtor's assets. On June 13, 2007, the Trustee filed the instant adversary case seeking to reclaim a total of $20,601.22 from Certified Steel Company ("CSC") as preference payments under 11 U.S.C. § 547. CSC filed an answer denying that the payments on which the adversary case was based were preferential. CSC averred that the payments were not made from Debtor's assets, but rather from the assets of two general contractors on construction projects for which Debtor was a subcontractor. On January 17, 2008, CSC moved for summary judgment. CSC's motion is ready for decision.[1]

---

[1]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

1

## Factual Findings

The payments at issue in this case were made through two checks – one in the amount of $9,894.64 issued by Lobar, Inc. ("Lobar") on March 18, 2005 and the second in the amount of $11,506.58 issued by Wohlsen Construction ("Wohlsen") on April 8, 2005. Both checks were subject to Joint Check Agreements ("JCAs") executed by the issuer, Debtor and CSC. The JCA involving Lobar contained the following relevant provisions:

> Payment: Any and all payments to [Debtor] by [Lobar] ... will be made payable jointly to [Debtor] and [CSC].... The joint checks will be mailed to [Debtor] with a copy to [CSC].

> Non-Endorsement by [Debtor]: In the event that [Debtor] fails or refuses to endorse any joint check issued by [Lobar] pursuant to this Agreement and forward it to [CSC] within ten (10) days after receipt, [Lobar] shall, upon the request of [CSC], promptly stop payment upon such check and issue a new check in the same amount payable solely to [CSC].

The JCA involving Wohlsen contained the following relevant provisions:

> payment for the materials, supplies and equipment furnished by [Debtor] or [CSC] to [Debtor] for work performed pursuant to the subcontract between [Wohlsen] and [Debtor] will be made by joint check drawn to both [Debtor] and [CSC].

> In the event that [Debtor] should refuse to endorse the joint check within five (5) calendar days of issuance, [Debtor] agrees that [Wohlsen] may issue a check payable directly to [CSC] . . . .

On March 18, 2005, Lobar issued a check in the amount of $9,094.64 to Debtor and CSC. Debtor timely endorsed the check over to CSC. On April 8, 2005, Wohlsen issued a check in the amount of $11,506.58 to Debtor and CSC, which Debtor also endorsed over to CSC. Debtor's chapter 11 petition was filed twenty (20) days later.

2

**Discussion**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *Id.* 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). When deciding a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movant. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992). Further, a court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Id.*

Section 547(b) authorizes trustees to avoid preferential transfers of a debtor's interest in property "if five conditions are satisfied and unless one of seven exceptions defined in subsection (c) is applicable." *Union Bank v. Wolas*, 502 U.S. 151, 161 (1991). Under § 547(b) a trustee may avoid transfers "of an interest of the debtor in property:"

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

3

(3) made while the debtor was insolvent;

(4) made–

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if –

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by . . . this title.

11 U.S.C. § 547(b). A trustee bears the burden of proof as to all elements of § 547(b). *Union Bank*, 502 U.S. at 161.

CSC maintains that the Trustee cannot carry his burden in this case because the nature of Debtor's "interest" in the payments was not of the kind contemplated by the language of § 547(b). I agree. Although the payments at issue listed Debtor as a payee, an examination of the JCA reveals that Debtor never obtained title to the funds at issue. Therefore, Debtor never exercised the quality or degree of control over the funds contemplated by the "interest of the debtor" language of § 547(b).

A similar issue was addressed in *In re Steelvest, Inc.*, 112 B.R. 852 (Bankr. W.D. Ky. 1990). In *Steelvest*, a general contractor ("Messer") entered into a contract with Steelvest in which Steelvest would furnish certain materials required for a construction project. In turn, Steelvest arranged for Consolidated Systems, Inc. ("Consolidated") to furnish structural steel for the project. As a condition precedent, Consolidated required Messer to pay for materials by issuing a joint check payable to both Steelvest and Consolidated.[2] During construction, Steelvest failed to endorse certain joint checks over to some of its suppliers. Thereafter, Messer began to

---

[2]Other Steelvest suppliers on the project also demanded and obtained joint check agreements.

4

issue checks directly to the suppliers, despite the respective joint check agreements.   When

Steelvest filed its chapter 11 petition shortly thereafter, it sought to recoup those payments as

preferences under § 547(b).  Consolidated fought the preference action against it, arguing that

Steelvest had an insufficient property interest in the funds to give rise to a preferential claim

because it had no "effective control" over the application of those funds, and no right to use them

to pay its other creditors.  The Court agreed.

> [W]hen Steelvest signed the joint check agreement with Messer and Consolidated, it effectively gave up control over the contract proceeds to the extent necessary to pay Consolidated. . . .  Steelvest's interest in the contract proceeds were purely administrative since Steelvest, by the very terms of the Materials Agreement, was obligated to verify proper performance before authorizing payment....  Steelvest had no real interest in the funds because it had no right to use Consolidated's funds to pay other creditors. Accordingly, we find that Steelvest did not possess a sufficient interest in the contract proceeds to avoid the transfer as a preference.

*Id.* 112 B.R. at 855.[3]

The instant case differs from *Steelvest* in that the Lobar and Wohlsen checks did not go

directly to the supplier, CSC.  The *Steelvest* opinion demonstrates that this distinction is

irrelevant because the Debtor was effectively divested of any interest in the checks at the time the

JCAs were executed. Debtor had no real interest in any portion of the $20,601.22 that was paid

by Lobar and Wohlsen to CSC because the JCAs effectively deprived Debtor of control over the

disposition of those funds.  Both JCAs make it clear that the checks were to be promptly signed

over to CSC and that Debtor's interest in them was purely administrative.  The Lobar JCA

specifically states that "[t]he total amount payable to [Debtor] to (sic) [CSC] ... shall not exceed

$9,093.09," while the Wohlsen JCA similarly states that "in no event will Joint Checks issued

---

[3]The Trustee cites *Steelvest* in his brief but does not distinguish it in any material way.

5

under this Joint Check Agreement exceed the dollar amount of $11,506.58." The Wohlsen joint check was issued in that exact amount, and the Lobar joint check exceeded the designated amount by less than $2.00. Both JCAs also provide for checks in the exact same amount to be issued to CSC in the event that Debtor did not promptly endorse them over. From these provisions, it is evident that at the time the JCA was executed, CSC had already provided a cost figure for its material and the parties wrote that cost into the JCA. Thus, it is further evident that Debtor was never intended to obtain an interest in any of the funds paid.

The Trustee points out that the Wohlsen JCA was executed within the preference period. He asserts that this agreement enabled CSA to "improve its position" vis-a-vis other creditors. Therefore, he argues, the checks issued pursuant to Wohlsen JCA were necessarily preferential. This argument is without merit. The JCA is a contract and does not, in itself, constitute a "payment" or a "transfer of an interest of the debtor in property." While it may be true that the JCA enabled CSC to improve its position in relation to other creditors during the preference period, such improvement does not negate the fact that Debtor was never intended, at any point, to obtain ownership rights to the funds represented by the check. Again, the evidence shows that the price of CSC's steel was pre-determined by the parties to be the amount of the checks written by Lobar and by Wohlsen. Debtor was a mere conduit of the funds, and was not intended to obtain any right to use the funds for its own purposes. Accordingly, as in *Steelvest*, regardless of the date on which the JCA was executed, Debtor did not obtain a sufficient interest in the contract proceeds to avoid the transfer as a preference.

In its brief on summary judgment, Debtor asserts that a question of fact exists as to whether Debtor executed the checks in question. Debtor produced no affidavits or other

6

evidence regarding this assertion. In support of its motion for summary judgment, CSC produced an affidavit in which its President specifically stated that each check was endorsed over by Debtor to CSC and was not deposited into any account owned or controlled by Debtor. Under the standards for summary judgment set forth in *Celotex, supra*, Debtor's failure to produce a counter affidavit or other evidence to challenge CSC's evidence is fatal to its ability to withstand the motion for summary judgment. The case cannot proceed to trial solely on the basis of Debtor's noncommittal assertion that it may not have endorsed the checks.[4]

An appropriate order will follow.

By the Court,

*Mary D. France*

Bankruptcy Judge

Date: March 26, 2008

*This document is electronically signed and filed on the same date.*

---

[4]Debtor does not offer any argument regarding the impact of its assertion on the merits of its case. Even if Debtor had been able to produce evidence that it did not endorse the check, the terms of the JCAs providing for the issuance of a check directly to CSC from Lobar and Wohlsen in the event of Debtor's failure to endorse the checks indicates that such evidence would have no impact on the instant decision. Whether or not Debtor endorsed the checks has no impact on the issue of whether Debtor ever had an ownership interest in the funds represented by the checks.

7